IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ROBERT WIRTZ JR.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-599-JHP-FHM |
| ) | |
| **SHERIFF VIC REGALADO, in his** ) | |
| **individual and official capacity,** ) | |
| **TULSA COUNTY BOARD OF COUNTY** ) | |
| **COMMISSIONERS, in their individual** ) | |
| **and official capacities,** ) | |
| **DR. WILLIAM COOPER, in his** ) | |
| **individual and official capacity,** ) | |
| **TURN KEY HEALTH CLINICS,** ) | |
| **individually and officially,** ) | |
| **DAVID L. MOSS CRIMINAL** ) | |
| **JUSTICE CENTER UNKNOWN** ) | |
| **CLASSIFICATIONS OFFICER NO. 1,** ) | |
| **individually and officially,** ) | |
| **ROY HERMAN, in his** ) | |
| **individual and official capacity,** ) | |
| ) | |
| Defendants. ) | |

**TULSA COUNTY SHERIFF'S OFFICE'S SPECIAL REPORT**

COMES NOW, the Tulsa County Sheriff's Office ("TCSO"), by and through its attorney Matthew Kehoe, as the law enforcement agency responsible for previously housing Plaintiff, and hereby submits the special report, pursuant to the Court's Order of February 28, 2019.[1]

---

[1] The Tulsa County Sheriff's Office operates the Tulsa County Jail, which is housed within the David L. Moss Criminal Justice Center, where Plaintiff was incarcerated from October 29, 2016, until May 11, 2017.

1

A. **FACTUAL BACKGROUND**

1. **Investigation and Review**

In preparing this Special Report, the undersigned counsel conducted interviews with and reviewed reports by Detention Officer Roy Herman, Dr. Josh Turley, Sheriff Vic Regalado, and Dr. William Cooper. Plaintiff was released from the custody of the Tulsa County Sheriff's Office on May 11, 2017, and is currently in the custody of the Oklahoma Department of Corrections at the Davis Correctional Facility in Holdenville, Oklahoma.

Sheriff Regalado is the Sheriff of Tulsa County. Sheriff Regalado stated that he had no independent recollection of meeting Plaintiff in the medical unit or having a discussion with him regarding any issues alleged in Plaintiff's Complaint.

Dr. Turley is the risk manager and PREA coordinator at the David L. Moss Criminal Justice Center. He stated that he corresponded with Plaintiff, both in person and by letter, on a number of occasions to address the issues raised by Plaintiff.

Dr. Cooper is one of the medical doctors at the jail. He stated that he had met with Plaintiff in person on a number of occasions in order to treat and address Plaintiff's medical issues concerns. He further documented his treatment of Plaintiff regarding those issues and concerns during Plaintiff's incarceration at the David L. Moss Criminal Justice Center.

Detention Officer Herman is the mail room officer at the David L. Moss Criminal Justice Center. He dealt with some of Plaintiff's legal mail. He returned certain legal mail to Plaintiff in late April 2017, as Plaintiff had attempted to send that mail out using indigent supplies from the law library, but was not indigent on the date Officer Herman came into possession of those legal

mailings. Officer Herman responded to Plaintiff's inmate request regarding these mailings, but has no other interaction with Plaintiff.

Additionally, counsel reviewed the following documents related to Plaintiff and his incarceration at David L. Moss Criminal Justice Center and has attached them as exhibits to this report:

- A. Plaintiff's Tulsa Police Department Arrest and Booking Sheet
- B. Plaintiff's Jailnet Booking Summary
- C. Inmate Handbook, October 2016 edition
- D. Plaintiff's Classifications Evaluation and Acknowledgement of receipt of Inmate Handbook
- E. Plaintiff's David L. Moss Criminal Justice Center Inmate Housing History From October 29, 2016, to May 11, 2017
- F. Plaintiff's Classification/Relocation Form December 20, 2016
- G. Herman McHenry's Inmate Housing History
- H. SOMS Incident Report 1638361
- I. CorEMR Full Patient History for Plaintiff
- J. Medication Administration Record for Plaintiff
- K. SOMS Incident Report 1638556
- L. SOMS Incident Report 1638557
- M. Plaintiff's Inmate Trust Account Record January 2017 to May 2017
- N. Incoming Inmate Mail Log for Plaintiff
- O. Outgoing Inmate Mail Log for Plaintiff
- P. Inmate Kiosk Requests made by Plaintiff

Q.  Written Inmate Requests submitted by Plaintiff

R.  Written Grievances submitted by Plaintiff

S.  TCSO Policy 20-04 Inmate Grievance and Request System

T.  TCSO Policy 20-08 Inmate Correspondence

U.  TCSO Policy 19-04 Classification

V.  TCSO Policy 20-02 Restrictive and Special Housing

W.  TCSO Policy 20-13 Inmates With Disability

X.  TCSO Policy 17-08 Medical Services

Y.  TurnKey Infirmary Policy

Z.  Picture of regular medical cell

AA.  Picture of overflow suicide watch cell

BB.  Plaintiff's Intake Screening Form

CC.  Plaintiff's Consent to Treatment

DD.  Letter from Dr. Turley to Plaintiff, April 18, 2017

EE.  Infirmary Report 11-2-16

FF.  Infirmary Report 12-17-16

GG.  Infirmary Report 3-8-17

HH.  Infirmary Report 3-22-17

II.  TCSO Policy 17-03 Detention Records

**2. Summary of Events**

a. <u>Arrest and Booking</u>

On October 29, 2016, Plaintiff was arrested by the Tulsa Police Department on charges of Robbery With a Firearm. See Exhibit A. He was the placed into the custody of the Tulsa County

Sheriff's Office and booked into the David L. Moss Criminal Justice Center on the same date. See Exhibit B. He was given a copy of the Inmate Handbook. See Exhibit C. The Inmate Handbook contains, among other things, information related to inmate mail (p. 9-11), housing and cell assignment (p. 11-13), health services (p. 15), and inmate requests and grievances (p. 21-23). See Exhibit C. Plaintiff acknowledged receipt of this handbook. See Exhibit D.

    a. <u>Plaintiff's Injuries While In Custody</u>

On December 15, 2016, Plaintiff fell off of a bench while awaiting court, resulting in an injury to his back. See Exhibit H. He returned to David L. Moss Criminal Justice Center on December 16, 2016. See Exhibit D. On December 24, 2016, pod officers were alerted to an incident involving Plaintiff in his cell. See Exhibits L and M. Plaintiff claimed to have fallen off the top bunk. A medical emergency was called by the pod officer and Plaintiff was sent to the hospital. He was returned from the hospital on December 29, 2016. See Exhibit E.

    b. <u>Classification and Cell Assignment</u>

As part of being booked into the David L. Moss Criminal Justice Center, Plaintiff filed out a classifications evaluation questionnaire. See Exhibit D. Plaintiff was then assigned to a cell. See Exhibit E. From October 29, 2016, until his release on May 11, 2017, Plaintiff's cell assignment changed a number of times. See Exhibit E. He was housed in the infirmary on three occasions. See Exhibits EE, FF, GG, and HH. He was noted as having a medical restriction on October 31, 2016. See Exhibit E. He was noted as needing a bottom bunk special housing accommodation on December 20, 2016. See Exhibit F. He was assigned a top bunk on two occasions, December 20, 2016, and February 18, 2017, but those assignments were changed by jail personnel on the same

dates.[2] See Exhibit E. He was never assigned to a top bunk by any classifications officers aside from those two dates. On December 24, 2016, he was housed in Pod J-6, Cell CC-2, which is the bottom bunk. See Exhibit E. His cellmate, Herman McHenry, had been assigned to the top bunk in that cell. See Exhibit G. Prior to his fall on December 24, 2016, he did not send any requests or grievances regarding his bunk placement. See Exhibits P (p. 7-29), Q, and R.

On March 7, 2017, he was placed in special housing in the medical unit due to being prescribed morphine. See Exhibits I (p. 355), E, and GG (p. 5). The medical cells are depicted in Exhibit Z. According to Dr. Cooper, the morphine he was prescribed was in the form of an extended release pill. Plaintiff was assigned to be housed in the medical unit as a safety precaution to protect him from inmates who might want access to his morphine and so that he could be observed by medical staff while on that medication. See Exhibit GG (p. 5). The medical unit is a special, restricted unit. See Exhibits U and V. Inmates in that unit are permitted to do the same activities and programs as other inmates, but are subject to special restrictions in place because of their conditions. See Exhibits U and V. He was at one point moved into a cell with a camera for approximately ten (10) days before being moved back to a regular, single occupancy medical cell. The camera cells are depicted in Exhibit AA. This was done for improved monitoring of Plaintiff as he was suspected of snorting his morphine. See Exhibits R (p. 9) and HH (p. 16, 92). After ten (10) days in this cell, he was reassigned to a cell depicted in Exhibit Z. See Exhibit E. He stayed

---

[2] A determination of what bunk an inmate is assigned can generally be made by looking at the last number of their cell assignment. For example, Plaintiff was housed in DLM-M-1-J7-U-2 on October 29, 2016. Translated, this means he was in David L. Moss, Pod J7, Cell U, Bunk 2. In cells with multiple bunks, bunk 1 is the top bunk and bunk 2 is the bottom bunk. In cells where there is only a single bunk, there will only be a number. For example, Plaintiff was house in DLM-M-1-MN-0-04 on March 22, 2017. Translated, this means he was is David L. Moss, Medical Unit, North Side, Cell 4, a single occupancy cell.

6

in this type of cell until his release to the custody of the Oklahoma Department of Corrections. See Exhibit E.

    c. Treatment and Medication

When he was booked into David L. Moss Criminal Justice Center, Plaintiff gave his consent to be treated by Armor Correctional Health Services, Inc. See Exhibit CC. His prior injury to his spine and diagnosis of spinal stenosis were noted, as well as the medication that he stated that he had been prescribed to treat his condition. See Exhibit I (p. 33-39). He was also noted as being intoxicated at that time. See Exhibits I (p. 78) and BB. He was started on a protocol for alcohol and opiate withdrawal. See Exhibits I (p. 84, 173-175, 380) and EE. He was given a number of medications to treat his pain. See Exhibits I and J. Initially, he was treated with Acetometaphin-Codeine #3 for his pain. See Exhibit J (p. 6-13). He was also given Cyclobenzaprine and Gabapentin for his muscle spasms. See Exhibit J (p. 7-13). He sent in a number of medical requests, claiming that this was not effective. See Exhibit P (p. 14, 19, 20). In response to his complaint, he was additionally given Methocarbamol, Oxcarbazepine, and Meloxicam. See Exhibit J (p. 13-20) He sent in a number of medical requests, claiming that these medications was not effective. See Exhibit P (p. 29, 34, 35, 37, 39, 41, 43, 49, 50, 51, 53, 58). Eventually, he was given morphine. See Exhibits I (p. 127, 131), J (p. 20-23), GG (p. 9-10). As a result of being prescribed this drug, he was placed in the medical unit. See Exhibits I (p. 355), E, GG (p. 9-10), and HH (p. 54-66).

A number of pain management clinics and doctors were contacted regarding a consultation for Plaintiff in order to manage his pain. See Exhibit I (p. 354-355). All declined. *Id.* A number of neurosurgeons were also contact regarding a neurological consult for Plaintiff. See Exhibit I (p. 355). All declined. *Id.* A number of physical therapists were contacted regarding treatment for

7

Plaintiff. See Exhibit I (p. 361-363). A physical therapist came to David L. Moss Criminal Justice Center on April 28, 2017, and April 29, 2017, and treated Plaintiff. See Exhibit I (p. 364).

        d.  <u>Requests and grievances</u>

Plaintiff frequently made use of both the inmate kiosk request system and the paper inmate request system. See Exhibits P and Q. His requests were all answered by staff. See Exhibits P and Q. He filed a number of grievances. See Exhibit R. Those issues were addressed and answered by staff. See Exhibits P, Q, R, and DD.

On a number of occasions, Plaintiff requested to see or made complaints regarding access to his medical records. See Exhibits P (p. 38, 39, 42, 43, 44, 46, 47, 48, 49, 50, 52, 55, 57, 60, 62, 63, 76), Q (p. 7, 9, 16, 23, 29, 31, 38, 40, 41, 42, 43, 44, 46), and R (p. 14, 17). He was allowed access to these records on a number of occasions. See Exhibits P (p. 38) and Q (p. 7, 9, 16, 23, 38, 41, 44). He was not allowed to take records with him to his cell. See Exhibits Q (p. 29, 31) and II. Plaintiff complained that his medical requests, which contained information about his medical conditions, were being stored in a manner that violated the law. See Exhibits P (p. 42, 52, 55, 60, 61, 62, 63, 64, 65, 66) and R (p. 17). However, Plaintiff would send medical requests through channels meant for non-medical requests, or would improperly combine requests involving medical issues with other issues he was having. See Exhibit P (p. 11, 14, 15, 17, 19, 21, 22, 29, 34, 35, 37, 38, 39, 41, 43, 49, 51, 52). Plaintiff's requests in this regard were not in conformance with policy regarding inmate requests and grievances. See Exhibits C and T. This was explained to Plaintiff. See Exhibits P (p. 60, 61, 64, 66) and DD. Plaintiff had acknowledged receipt of this policy. See Exhibit D.

e. <u>Mail</u>

Jail policy permits the sending and receipt of inmate mail. See Exhibits C and U. Jail policy also provides for mail supplies for persons who are determined to be indigent. See Exhibit U. Plaintiff sent out mail on a number of occasions. See Exhibit O. Plaintiff also received mail while in custody. See Exhibit N. From January 3, 2017, until April 14, 2017, Plaintiff was determined to be indigent, as he had no positive balance on his inmate trust account. See Exhibit M. However, on April 15, 2017, he had money placed on his inmate trust account and was no longer considered indigent. See Exhibit M. Therefore, he did not qualify for indigent mail supplies. See Exhibit U. Because he was not indigent on the day the mailroom was in receipt of his letters, those letters were returned to him. See Exhibits O and Q (p. 47). He subsequently sent out mail and the charges were billed to his inmate trust account. See Exhibit O.

**B. ACTIONS TO BE TAKEN BY THE INSTITUTION TO RESOLVE SUBJECT MATTER OF THE COMPLAINT**

The Court's Order of February 28, 2019, requires officials responsible for the agency involved to consider whether any action can and should be taken by the institution or other appropriate officials to resolve the subject matter of the complaint. From the interviews conducted by counsel and review of the relevant documents, it is not necessary at this point that the TCSO take further action, as Plaintiff is no longer in TCSO custody and his issues raised while in custody were addressed by TCSO and medical staff.

**C. OTHER RELATED COMPLAINTS**

The Court's Order of February 28, 2019, requires counsel to determine whether other like complaints, whether pending in this Court or elsewhere, are related to Complaint and should be taken up and considered together. There are no related cases pending in the Northern District related to Mr. Wirtz's claims that would be relevant to the Court's consideration of this case.

Respectfully submitted,

/s/ *Matthew Kehoe*
Matthew Kehoe, OBA #22615
TULSA COUNTY DISTRICT ATTORNEY'S OFFICE
500 S. Denver Ave., Suite 800
Tulsa, OK   74103
Tel: (918) 596-4856
Fax: (918) 596-4803

**CERTIFICATE OF MAILING & ELECTRONIC NOTICE**

I certify that on May 10, 2019, I caused a true and correct copy of this document to be electronically transmitted to the Clerk of Court using the ECF system for filing. Further, I certified that on the date of May 10, 2019, placed a copy of this document in the United States mail, first class postage fully pre-paid, addressed to the following:

Robert Wirtz, Jr. #198927
Davis Correctional Facility
688 East 133rd Road
Holdenville, OK 74848

/s/ Matthew Kehoe
Matthew Kehoe
