IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROBERT WIRTZ, JR.,       )
    PLAINTIFF,          )
V.                       ) NO. 18-CV-599-JHP-FHM
SHERIFF, VIC REGALADO, ET., AL,  )
    DEFENDANTS.         )

PLAINTIFF'S SPECIAL REPORT

RECEIVED
JUN 07 2019
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

ROBERT WIRTZ #198927
DAVIS CORR. FAC.
6888 E. 133 Rd.
HOLDENVILLE, OK 74848

JUNE 4, 2019

✓ Mail  ___No Cert Svc  ___No Orig Sign
___C/J  ___C/MJ  ___C/Ret'd  ✓No Env
✓No Cpy's  ___No Env/Cpy's  ___O/J  ___O/MJ

# MEDICAL CHART/S HISTORY

1. Plaintiff suffers from the disability of spinal stenosis from a 3-story fall in 1991 that caused a T-12 wedge-compression fracture. For the 8 yrs. prior to his arrest on 10-29-16, he had been under the care of chronic pain management doctors who prescribed Fentanyl, 100 mic. patches for pain. (I, 35, 78, 80; P, 14, 19, 20, 34, 35, 37, 43, 126; EE, 4).

2. On 10-29-16 during intake medical screening, Ms. Diedre Fletcher noted the disability, spinal stenosis, and Fentanyl. (I, 35, 78, 80).

3. On 11-2-16 the Fentanyl was DC'd and Plaintiff was admitted to the infirmary for opiod and alcohol withdrawal by Dr. Curtis McElroy (EE, 1). LPN, Bishop prescribed Tylenol 3 for 5 days. (I, 88)

4. On 11-3-16 Plaintiff was "medically cleared" for general population ("GP"). (E, 2).

5. On 11-10-16 Plaintiff complained that the T-3 was not working and requested chronic pain management (I, 44) and the chart notes "spinal stenosis" with "wedge compression fracture". (I, 89).

6. On 11-18-16, RN, Julie Hughes orders lower bunk restriction due to "spinal issues". (I, 94).

7. On 12-2-16 Dr. McElroy notes history of disability and 8 years on Fentanyl. (EE, 4).

8. On 12-5-16 Martha Sloan notes that Plaintiff is complaining of chronic pain since 1991, incontinence, numbness and tingling in feet. (I, 95)

-1-

9. On 12-15-16, the pain and numbness became so severe that plaintiff collapsed in a court holding cell and was transported by EMSA to Hillcrest Hospital (H; I, 95, 96). Although the Hillcrest doctors had prescribed much stronger pain medications and recommended that plaintiff see a chronic pain specialist and nuero surgeon, Dr. McElroy prescribed more Tylenol 3. (I, 96).

10. On 12-17-16, LPN Canter noted plaintiff's history of disability, the chronic pain medications and management. (I, 98).

11. On 12-22-16 plaintiff had his first appointment with Dr. Cooper, who noted the entire history of the disability, the chronic pain management medications and plaintiff's complaint that the Tylenol 3 was not working. Dr. Cooper prescribed Methocarbamol, 500 mg and Oxycarbazepine, 150 mg, and more Tylenol 3. (I, 124).

12. Between his booking date on 10-29-16 and the fall from the top bunk discussed below on 12-24-16, plaintiff submitted 13 grievances[1] complaining about his pain level, numbness, loss of bladder control,

-2-

---

[1]. While in GP inmates at the jail may only submit grievances on the kiosk computer system and while in the infirmary, paper forms must be used (Exhibits Q and R) because kiosk access is not allowed. Thus, the difference between Exhibits P-Kiosk-and Q&R-Paper.

THE DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEED AND REQUESTING CHRONIC PAIN MANAGEMENT. (P, 10, 11, 14, 15, 19, 20, 21).

13. ON 12-24-16 PLAINTIFF FELL FROM HIS TOP BUNK[2] AND WAS UNABLE TO MOVE HIS LEGS. HE WAS TAKEN BY EMSA TO HILLCREST AND RETURNED THAT EVENING (WITH SAME ORDERS AS BEFORE FOR PAIN MEDICATIONS AND CONSULTS WITH SPECIALISTS) AND PLACED IN THE INFIRMARY. (I, 101, 102).

14. ON CHRISTMAS DAY, 12-25-16, PLAINTIFF WAS FOUND BY RN, JULIE HUGHES, LYING ON THE CELL FLOOR CRYING IN PAIN, UNABLE TO FEEL HIS LEGS OR MOVE. PER DR. COOPER'S ORDERS, PLAINTIFF WAS RETURNED TO HILLCREST. (I, 103, 104).

15. FOR THE NEXT FIVE DAYS, THE HILLCREST DOCTORS TREATED PLAINTIFF'S PAIN (WITH IV DILADUD AND A 100 MIC FENTANYL PATCH) AND EVALUATED HIS CONDITION WITH AN MRI. THEY ADVISED PLAINTIFF THAT HE MUST KEEP TAKING THE PAIN MEDICATIONS (WHICH THEY PRESCRIBED) TO AVOID SPASMS AND NUMBNESS, AND THAT HE MUST CONSULT A CHRONIC PAIN DOCTOR AND NUERO-SURGEON. THE DOCTORS SHOWED PLAINTIFF THEIR RELEASE ORDERS TO THIS EFFECT. (P, 46).

-3-

---

2. SEE PLAINTIFF'S AFFIDAVIT - EXHIBIT A HERETO - REGARDING THE TOP BUNK PLACEMENT.

16. On 12-29-16, Plaintiff was returned from Hillcrest with the orders for pain medications and consults. (I, 131; P, 29, 35, 37, 43, 46). Plaintiff made every effort to obtain the Hillcrest records from the Medical Records Custodian pursuant to 76 O.S. § 19 but was refused under the guise that third party records are excludable, which they are not. (See P, 60, 63 and 64 citing OK. Admin. Code 435 10-7-11, para 6 and 76 O.S. § 19).

17. On 12-31-16, Plaintiff was returned to GP by LPN Canter with orders for a lower bunk and handicap cell (I, 107).

18. For the next two months, Plaintiff submitted 29 grievances, including complaints of out of control pain, numbness and loss of bladder control (P, 29, 30, 31, 34, 37, 38, 39, 41, 42, 49, 50, 51, 55, 56, 58, 59); requests to be seen by a chronic pain specialist and spinal specialist per the Hillcrest orders (P, 29, 34, 35, 37, 38, 39); that his pain be treated "effectively" pursuant to 63 O.S. § 2-55 and OK. Admin. Code 435 10-7-11 (P, 38, 43, 46); that Dr. Cooper provide the "standard of care that every other doctor to treat me for this chronic injury for the last ten years" has provided (P, 46); that Dr. Cooper provide a written treatment plan pursuant to OK. Admin. Code 435:10-7-11(2) (P, 38, 77, 78); access to his medical records (P, 38, 46, 63, 64); complaints

-4-

THAT HIS PRIVACY RIGHTS WERE BEING VIOLATED BY THE JAIL GRIEVANCE PROCESS[3] PURSUANT TO BOTH STATE AND FEDERAL LAW (P, 55, 60) AND THAT NONE OF HIS GRIEVANCES WAS EVER ANSWERED IN WRITING. (P, 41, 47, 48, 62, 77). DURING THIS SAME PERIOD OF TIME, PLAINTIFF SENT SEVERAL TYPED LETTERS TO THE SHERIFF, DR. COOPER AND TURN KEY, COMPLAINING ABOUT THESE SAME MATTERS BUT HE RECEIVED NO REPLY. HE ALSO SENT THE TULSA BCC A TORT CLAIM NOTICE.

19. ON 2-15-17, A FULL SIX WEEKS AFTER HIS RETURN FROM HILLCREST, PLAINTIFF HAD HIS SECOND APPOINTMENT WITH DR. COOPER AND ADVISED HIM THAT THE MEDICATIONS HE PRESCRIBED ON 12-22-16 PROVIDED "ZILCH" RELIEF; THAT PLAINTIFF HAD LOST CONTROL OF HIS BLADDER TWICE RECENTLY AND REQUESTED THE CONSULTATIONS WITH A CHRONIC PAIN SPECIALIST AND SPINAL SURGEON. (I, 126, 127). DR. COOPER ADVISED THAT HE WOULD CONSIDER MEDICATIONS AND A

-5-

---

3. AS MENTIONED IN FN 1, INFRA, INMATES IN GP MUST USE THE KIOSK SYSTEM WHICH HAS ONLY ONE ICON/FILE FOR "GRIEVANCES." EVEN IF THE GRIEVANCE IS OF A PRIVATE MEDICAL MATTER, THAT RECORD IS NOT MAINTAINED BY THE MEDICAL RECORDS CUSTODIAN (Q, 42). PLAINTIFF SUBMITTED HIS GRIEVANCES REGARDING THIS PRIVACY VIOLATION AND WAS TOLD THAT GENERAL COUNSEL WOULD BE CONSULTED BUT HE NEVER HEARD ANY ANSWER BACK. (P, 60, 63-65).

SPINAL SURGEON CONSULT AFTER A CHRONIC PAIN CONSULT,[4] AND UPPED THE DOSE OF METHOCARBAMOL FROM 500 TO 750 MG. (Id).

20. ON 2-20-17 AND 2-23-17 "NO IMPROVEMENT OF PAIN" WAS NOTED. (I, 254, 255).

21. ON 2-25-17 AND 2-26-17 PLAINTIFF CONTINUED TO ASK TO BE SEEN BY A CHRONIC PAIN DOCTOR. (I, 256, 257)

22. ON 2-28-17 PLAINTIFF HAD HIS THIRD APPOINTMENT WITH DR. COOPER, ADVISING HIM THAT THE PAIN WAS STILL UNCHECKED. DR. COOPER REFUSED TO PRESCRIBE ANY NARCOTICS. PLAINTIFF REQUESTED METHADONE TO WHICH DR. COOPER REPLIED THAT IT "WAS A SCHEDULE II AND WOULD NOT BE PRESCRIBED BY ME FOR PAIN". (I, 355).

23. ON 3-1-17 TWO FULL MONTHS AFTER PLAINTIFF'S RETURN FROM HILLCREST, DR. COOPER MAKES HIS FIRST ATTEMPT TO ESTABLISH A CHRONIC PAIN DOCTOR CONSULT. (I, 355).

24. ON 3-6-17, PLAINTIFF HAD HIS FOURTH APPOINTMENT WITH DR. COOPER WHO ADVISED THAT BECAUSE HE WAS UNABLE TO OBTAIN A CHRONIC PAIN DOCTOR CONSULT., HE WAS "AGREEING TO RESUME [PLAINTIFF'S] PAIN MEDICATIONS" BY PRESCRIBING ... METHADONE AND MORPHINE. (I, 130, 131). THIS WAS A FULL 9 WEEKS

-6-

4. SIGNIFICANTLY, DR. COOPER DID NOT ATTEMPT TO OBTAIN A CHRONIC PAIN DOCTOR CONSULT, UNTIL OVER TWO WEEKS LATER ON 3-1-17 (I, 355) A FULL TWO MONTHS AFTER PLAINTIFF'S RETURN FROM HILLCREST, DESPITE PLAINTIFF'S COUNTLESS GRIEVANCES AND REQUESTS.

after plaintiff's release from Hillcrest with pain control orders and over 4 months since plaintiff's pain medications were first withheld from him by the 11-2-16 order. (EE, 1).

25. On 3-6-17, Dr. Cooper also noted that "we will attempt to arrange for a spinal surgeon consult as recommended by the ER. I had planned to arrange this if the pain management wasn't sufficient". (I, 131). This was a full 9 weeks after the "ER" orders of 12-29-16 and for two months plaintiff had made abundantly clear that the pain management "wasn't sufficient" through his numerous – almost daily – grievances.

26. On 3-7-17 Plaintiff was moved to the medical unit by "administration due to being on morphine" (I, 355). This was in violation of policy, which states that only the doctor can admit someone to the medical unit/infirmary. (Y, 3, para. 1)

27. On 3-8-17, an appointment with a spinal surgeon was confirmed.[5] (~~~~) (I, 263).

28. On 3-10-17 because plaintiff complained that he was not allowed to go to programs such as church and the law library, Dr. Cooper allowed plaintiff to return to GP, provided he come to the nurse station for his medication and submit to a

—7—

---

5. See plaintiff's affidavit regarding that visit, exhibit A hereto.

MOUTH EXAM TO MAKE SURE HIS MEDS WERE TAKEN. (GG, 5).

29. ON 3-22-17, PLAINTIFF WAS READMITTED TO THE MEDICAL UNIT PER ORDER OF DR. COOPER, STATING "PATIENT WITH HISTORY OF SPINAL STENOSIS AND CHRONIC BACK PAIN IS BEING READMITTED TO THE INFIRMARY FOR ENHANCED PAIN CONTROL." (GG, 5). NO REASON WAS GIVEN AS TO WHY PLAINTIFF COULD NOT CONTINUE TAKING HIS MEDICATION AT THE NURSES STATION AND HE WAS TOLD THAT HE COULD ONLY GO BACK TO GP IF HE GAVE UP THE PAIN MEDICATIONS.

30. ON 4-14-17 DR. COOPER NOTES THAT HE "RECEIVED CONSULT RECORDS [FROM SPINAL SURGEON] AND [THAT] PHYSICAL THERAPY AND MASSAGE THERAPY WERE RECOMMENDED". (HH, 27).

31. ON 4-28-17, PLAINTIFF HAD HIS ONE AND ONLY VISIT WITH A PHYSICAL THERAPIST FOR ½ HR. WHO MERELY SPOKE TO PLAINTIFF AND SAID HE'D BE BACK WITH PHYSICAL THERAPY IMPLEMENTS THE NEXT DAY BUT NEVER RETURNED. (HH, 39, 43, 45).

32. ON 5-10-17, PLAINTIFF WAS TRANSFERRED TO DOC.

33. FROM 3-22-17 TO 5-10-17 PLAINTIFF WAS HOUSED IN A MEDICAL CELL THAT HAD NO CHAIR OR TABLE TO EAT AT (Z). BECAUSE THE FOOD TRAYS ARE "STACK TRAYS" (WHERE THE BOTTOMS ACT AS THE TOPS OF TRAYS BELOW) WITH FOOD ALL OVER THE BOTTOM, PLAINTIFF COULD NOT SIT ON HIS BUNK WITH THE TRAY IN HIS LAP AND WAS FORCED TO LAY HIS TRAYS ON

-8-

THE FLOOR AND EAT FROM THIS POSITION. HE WAS CONFINED TO THIS CELL 24/7, ALLOWED OUT ONLY 3 TIMES PER WEEK FOR 15 MINUTES TO SHOWER.[6] DESPITE THE FACT THAT THE POLICY - WRITTEN POLICY - STATES THAT DISABLED INMATES ARE TO BE ALLOWED THE SAME PROGRAMS, SERVICES AND ACTIVITIES AS NON-DISABLED INMATES (W, 2), THE OFFICIAL CUSTOM AT THE JAIL WAS TO NEVER ALLOW ANY INMATES IN THE MEDICAL UNIT ACCESS TO ANY PROGRAM, SERVICE OR ACTIVITY. (Q, 8)

34. PLAINTIFF WAS DENIED ALL REGULAR PROGRAMS, SERVICES AND ACTIVITIES ENJOYED BY NON-DISABLED INMATES, INCLUDING 10 HOURS PER DAY OF TELIVISION, OUTDOOR REC/SUNLIGHT, LAW LIBRARY, CHURCH, ART CLASS, BIBLE STUDY WITH VISITING CLERGY, DAILY SHOWERS AND A TABLE AND CHAIR TO EAT ON. AND FOR ONE TWO WEEK PERIOD, PLAINTIFF WAS HOUSED IN AN OBSERVATION CELL WITH NO RUNNING WATER AND THE LIGHTS LEFT ON 24/7. (PHOTO, AA).

35. ACCORDINGLY, DURING THIS TIME IN THE MEDICAL UNIT, PLAINTIFF SUBMITTED 31 WRITTEN GRIEVANCES AND 42 REQUESTS, INCLUDING COMPLAINTS (IN ORDER TO EXHAUST HIS ADMIN. REMEDIES) ABOUT BEING FORCED

-9-

---

6. CONVERSELY, INMATES WHO ARE IN PUNITIVE SEGREGATION FOR MISCONDUCTS HAVE A TABLE AND CHAIR TO EAT ON AND GET OUTDOOR REC AND SUNLIGHT.

TO EAT ON THE FLOOR (R, 5, 6, 11, 18, 27, 28), VIOLATIONS OF THE AMERICAN'S WITH DISABILITIES ACT ("ADA") (R, 5, 6, 18, 26, 27, 28), DENIAL OF ACCESS TO THE LAW LIBRARY (R, 7, 12, 29), LACK OF RUNNING WATER IN THE CELL (R, 29, 20, 22; Q, 19, 24, 30), BRIGHT LIGHTS ON 24/7 (R, 13), ACCESS TO MEDICAL RECORDS (R, 14, 16, 17; Q, 7, 9, 11, 16, 20, 23, 29, 32, 33, 38, 42) AND THE CONTINUED REQUEST FOR A WRITTEN TREATMENT PLAN, (R, 20; Q, 14, 17, 18) (ALSO, Q, 44).

36. SOME TIME IN APRIL, 2017, SHERIFF REGALADO APPOINTED A NEW JAIL ADMINISTRATOR, DAVID PARKER. WHEN PLAINTIFF'S ADA GRIEVANCES REACHED HIS DESK, MR. PARKER CAME TO VISIT PLAINTIFF[7] AND ADMITTED THAT PLAINTIFF WAS CORRECT; THAT HIS TREATMENT IN THE MEDICAL UNIT VIOLATED BOTH THE ADA AND JAIL POLICY AND HE GRANTED PLAINTIFF'S GRIEVANCE ON MAY 4, 2017, ORDERING THAT PLAINTIFF BE ALLOWED 10 HRS OF T.V. PER DAY, SUNLIGHT, RECREATION, DAILY SHOWERS, CHURCH SERVICES, PROGRAMS, LAW LIBRARY, A CHAIR AND TABLE, AND ACCESS TO THE KIOSK (R, 28). HE ALSO PREPARED A MEMO TO THIS EFFECT, DIRECTING JAIL STAFF TO PROVIDE THESE PROGRAMS, SERVICES AND ACTIVITIES AND TAPED IT TO PLAINTIFF'S CELL WINDOW. (AS WITH THE HILLCREST RECORDS, THE

-10-

---

7. SEE PLAINTIFF'S AFFIDAVIT REGARDING THIS VISIT, EXHIBIT A HERETO.

NUMEROUS TYPED LETTERS OF PLAINTIFF AND THE RECORDS FROM THE SPINAL DOCTOR, THIS IS MISSING FROM THE RECORDS PRODUCED BY DEFENDANTS IN THEIR REPORT).

37. SIX DAYS LATER, ON 5-10-17, PLAINTIFF WAS TRANSFERRED TO DOC.

RESPECTFULLY SUBMITTED THIS 4TH DAY OF JUNE, 2018,

_____
ROBERT WIRTZ, JR., PRO-SE

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON THIS 4TH DAY OF JUNE, 2018, I MAILED NOTICE TO COUNSEL FOR THE DEFENDANTS, AS ADDRESSED BELOW, THAT I HAD FILED THIS SPECIAL REPORT AND THAT, BECAUSE I AM UNABLE TO OBTAIN COPIES, THAT COUNSEL COULD ACCESS IT ON PACER, ELECTRONICALLY.

_____
ROBERT WIRTZ, JR.

COUNTY OF PAYNE,       )     RE: NO. 18-CV-599-JHP-FHM
                       ) SS:
STATE OF OKLAHOMA      )

### AFFIDAVIT/VERIFICATION

ROBERT WIRTZ, JR., BEING DULY SWORN, DEPOSES AND STATES:

1. THAT I DO HEREBY VERIFY ALL FACTUAL ALLEGATIONS WITHIN THE FOREGOING SPECIAL REPORT AS TRUE AND CORRECT TO THE VERY BEST OF MY KNOWLEDGE AND BELIEF;

2. THAT IRRESPECTIVE OF WHAT BUNK ASSIGNMENT NUMBERS DEFENDANT REGALADO NOW PRODUCES, ON DEC. 22, 2016, WHILE I WAS HOUSED IN THE JAIL, I WAS TOLD BY THE POD OFFICER TO MOVE TO J-6-CC TOP BUNK. I INFORMED HIM THAT I HAD A MEDICAL RESTRICTION AND HE VERIFIED THIS BUT SAID THAT IT WOULD BE "STRAIGHTENED OUT TOMORROW" BY CLASSIFICATIONS AND I'D BE MOVED. WELL, IT WASN'T. FOR 3 DAYS, I COMPLAINED TO EVERY OFFICER ON EVERY SHIFT BUT THEY WERE ALL INDIFFERENT, STATING THAT "CLASSIFICATIONS" WOULD HAVE TO FIX IT. THUS, I WAS ON THE TOP BUNK ON 12-24-16 WHEN I FELL.

3. DEFENDANT CLAIMS THAT I DID NOT SEE A NEUROLOGIST. (SPECIAL REPORT AT p. 7 "ALL DECLINED"). THIS IS NOT TRUE. I WAS TAKEN BY TWO SHERIFF'S DEPUTIES TO A NEURO SURGEON SOMETIME BETWEEN MARCH 14 AN 22, 2017. (COMPLAINT AT 11). THE NEURO

surgeon recommended that I continue pain management (with morphine) and that I engage in physical therapy and massage therapy 2x weekly. Dr. Cooper notes this consult opinion in his notes on 4-14-17 (see HH, 27 of Special Report). The physical therapy he recommended, we discussed, to include the use of a facility equipped with weights, medicine balls, balance beams, large rubber ball for stretching, a pool for swim therapy, whirlpool for cold treatments, etc. A rigorous routine of stretching, weight training, swim therapy and cold treatment was to be followed by massage therapy. Dr. Cooper stated that they could not afford to send me out for therapy 2x a week and sought a therapist to come into the jail to see me. He came one time, on 4-28-17 and we only talked, discussing my pain, range of motion, limitations, etc., for ½ an hr. He said that he would be back the next day but did not arrive. Dr. Cooper waited for 9 weeks from my return from the E.R. on 12-29-16 with orders to consult a neurosurgeon. (see PSR at 25, above). Had he promptly done so, I could have obtained the proper therapy months before....

4. On May 5, 2017, Jail Administrator, David Parker, came to my cell in medical and informed that he was granting my ADA

-2-

GRIEVANCE. HE EVEN APOLOGIZED FOR THE WAY I'D BEEN ABUSED AND DRAFTED A MEMO THAT HE SIGNED AND TAPED TO MY CELL WINDOW, ORDERING THAT I BE ALLOWED A CHAIR AND TABLE TO EAT AT, DAILY SHOWERS, 10 HRS OF T.V. DAILY, ACCESS TO SUNLIGHT OF 1 HR. DAILY, ACCESS TO THE LAW LIBRARY AND CHURCH AND THE KIOSK. IT IS MY UNDERSTANDING THAT MR. PARKER HAD RECENTLY BEEN HIRED AND IT LOOKED LIKE HE WAS READY TO MAKE POSITIVE CHANGES. UNFORTUNATELY FOR ME, HE CAME MONTHS TOO LATE AND ONLY A WEEK BEFORE I LEFT.

FURTHER, AFFIANT SAYETH NAUGHT.

_____  6-5-19
ROBERT [signature], JR.

_____  6-5-19
       WITNESS

_____  6-5-19
       WITNESS

U.S. POSTAGE >> PITNEY BOWES
$ 002.05
ZIP 74848
02 4W
0000365149 JUN 04 2019

Postmarked 6/4/19-DG

RECEIVED
JUN 07 2019
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

Robert Wirtz #198927
Davis Corr. Fac.
6888 E. 133 Rd.
Holdenville, OK

Clerk of the Court
333 W. 4th St. Rm. 411
Tulsa, OK 74103

