**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ROBERT WIRTZ, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-0599-GKF-FHM** |
| | ) | |
| **SHERIFF VIC REGALADO, in his** | ) | |
| **individual and official capacity; et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendant Roy Herman's dismissal motion (Dkt. 22). For the reasons that follow, the Court grants the motion and dismisses the complaint, in part, as to Count V and all claims asserted against Herman.

## I.     Allegations of the Complaint

Plaintiff Robert Wirtz, Jr., a state inmate appearing pro se, brings this action to vindicate violations of his civil rights that allegedly occurred while he was incarcerated at the David L. Moss Criminal Justice Center (DLMCJC) in Tulsa, Oklahoma. Dkt. 1, generally. The following facts from the complaint are relevant to the claims he asserts against defendant Roy Herman: Wirtz was injured in December 2016, after he fell from the top bunk of his jail cell. *Id.* at 6, 16. As a result of the injury and "the subsequent lack of proper medical care," Wirtz began writing letters to attorneys, the ACLU, and various federal and state entities. *Id.* at 14 n.6, 16. At some point, Wirtz "realized that several of his legal correspondences were not being received or answered." *Id.* at 14. According to Wirtz, Herman "intentionally intercepted" several pieces of Wirtz's legal mail. *Id.* at 14-20.

Wirtz alleges he mailed a mandamus action to the Tulsa County District Court on January 30, 2017, seeking a writ for access to his medical records, but the mandamus action was never received or filed by court. Dkt. 1, at 14. In mid-March, Wirtz asked Herman for a copy of the legal mail log, but Herman refused to provide it. *Id.* at 14, 16. Wirtz began keeping his own mail log and discovered that his defense counsel did not receive three letters Wirtz mailed to him in late March and early April. *Id.* at 16.

On April 7, 2017, Wirtz wrote a letter to the Honorable John E. Dowdell, District Judge for the United States District Court for the Northern District of Oklahoma, to express his concerns about deficiencies in the DLMCJC's medical unit. *Id.* at 17. According to Wirtz, "[t]hat letter resulted in Case No. 17-CV-197-CVE-TLW."[1] *Id.* Wirtz mailed "additional letters" on April 7, "such as to the National Commission on Correctional Health Care," but has "never heard back from [them]." *Id.* at 18.

Thereafter, Wirtz sent, or attempted to send, four letters. *First*, on April 12, 2017, Wirtz wrote a letter to the Attorney General of Oklahoma, asking the Attorney General to investigate violations of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. 104-191, 110 Stat. 1936 (Aug. 21, 1996), allegedly committed by Sheriff Regalado and the DLMCJC's medical department. Dkt. 1, at 15, 17. With that letter, Wirtz included an "affidavit" supporting his request that the Attorney General pursue misdemeanor charges against Kathy Pingleton, the DLMCJC's medical record custodian, "for refusing to provide [Wirtz] with his medical records pursuant to 76 O.S. § 19 and § 20." *Id.* at 15. In addition, Wirtz enclosed copies

---

[1] This court dismissed Wirtz's second amended complaint without prejudice, on November 8, 2017, for failure to comply with court orders. *See* Dkt. 27, N.D. Okla. Case No. 17-CV-197-CVE-JFJ. Wirtz commenced the instant action on November 19, 2018, by refiling the second amended complaint from the prior action. Dkt. 1, at 1.

of letters he had previously sent to the Medical Board, Turn Key Health Clinics, LLC (Turn Key), Regalado, and the Tulsa County Board of County Commissioners (BOCC). Dkt. 1, at 17. *Second*, also on April 12, Wirtz wrote a letter to the Department of Homeland Security's Civil Rights and Civil Liberties Division, "asking for their intervention into the continued violations of the medical department." *Id.* With this letter too, Wirtz enclosed copies of the letters he previously sent to the Medical Board, Turn Key, Regalado, and the BOCC. *Id.* *Third*, on April 12, Wirtz wrote a letter to the Clerk of Court for the United States District Court for the Northern District of Oklahoma, requesting copies of records. *Id.* at 18. *Fourth*, and finally, on April 14, Wirtz sent a complaint to the Medical Board of Oklahoma, complaining of Dr. William Cooper's deliberate indifference to his serious medical needs, Cooper's violations of certain provisions of the Oklahoma Administrative Code, and Cooper's ethics violations. *Id.* at 15, 18.

Wirtz addressed the envelopes for each of these four letters with the recipient's current address, sealed the envelopes, and placed them in the "medical mailbox." *Id.* at 18. At the time he mailed these letters, and at least until April 15, 2017, Wirtz was indigent, meaning the DLMCJC should have paid the postage. *Id.* at 18 nn. 4 & 5. On April 20, 2017, "after numerous requests regarding the missing mail," Herman told Wirtz that he had returned several pieces of legal mail to Wirtz because Wirtz was not indigent and thus did not qualify for free postage. Dkt. 1, at 14-15. That same day, Wirtz obtained a copy of the legal mail log showing that Detention Officer Beeler deposited Wirtz's mail in the outgoing legal mail on April 19. *Id.* at 19. Herman did not return the letters to Wirtz until April 25, one day after Herman picked them up from the medical unit's mailbox. *Id.* at 15, 19. When Herman returned the letters to Wirtz, all four envelopes were marked, "REFUSED" and bore stickers indicating Wirtz was not indigent as of April 15, 2017. *Id.* at 18. On April 25, Wirtz submitted a Request to Staff to Herman, seeking permission to place

the returned letters in new envelopes, but Herman refused to mail the letters. *Id.* at 15, 19. Wirtz

alleges these facts show that Herman "intentionally intercepted these legal mailings that were listed

as outgoing mail by the other mail staff on April, 20, 2017." Dkt. 1, at 15.

On May 2, 2017, Wirtz "attempted to mail" an "affidavit in support of probable cause" to

the United States Attorney, urging Herman's criminal prosecution for violating three provisions

of federal law relating to the obstruction or destruction of mail. *Id.* Herman also withheld this

letter, but he did not return it to Wirtz. *Id.*

Based on these factual allegations, Wirtz claims, in Count V of the complaint,[2] that Herman

deprived him of his rights to access the courts and redress his grievances, in violation of the First,

Fifth and Fourteenth Amendments, by intentionally interfering with the delivery of Wirtz's

outgoing legal mail. Dkt. 1, at 3, 14-15. In addition, Wirtz claims Herman violated Oklahoma

Administrative Code § 310:670-5-9(7) by failing to collect and deliver his outgoing legal mail on

a daily basis.[3] *Id.* at 15, 18.

## II.     Motion to dismiss standard

Herman seeks dismissal of Count V under Federal Rule of Civil Procedure 12(b)(6). In

considering whether to dismiss a complaint under Rule 12(b)(6), a court must accept as true the

plaintiff's well-pleaded factual allegations, and reasonable inferences that can be drawn therefrom,

to determine whether the plaintiff has alleged "enough facts to state a claim to relief that is

---

[2] Even liberally construed, the Court does not read the complaint as asserting the claims identified in Count V against any defendant other than Herman. *See* Dkt. 1, at 3, 14-15 (identifying Count V and referring to allegations in complaint specific to Herman). Further, the Court does not read the complaint as asserting the claims identified in Counts I through IV against Herman.

[3] This Code provision states: "Outgoing prisoner mail shall be collected and sent daily except Sundays and holidays. Incoming mail shall be delivered to prisoners within twenty-four (24) hours of its arrival at the facility with the exception of weekends." OKLA. ADMIN. CODE § 310:670-5-9(7) (2020).

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible if the facts alleged "raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to establish plaintiff's claim. *Id.* at 556.

In addition, when a plaintiff appears pro se, the court must liberally construe the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The rule of liberal construction does not free a pro se plaintiff from his or her burden to "alleg[e] sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Rather, the rule eases that burden by permitting the court to overlook basic drafting errors and confusion of legal theories in determining whether the complaint can be "reasonably read . . . to state a valid claim on which the plaintiff could prevail." *Id.*

At the motion-to-dismiss stage, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable . . . ." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018) (quoting *Bell Atl. Corp.*, 550 U.S. at 556). But dismissal is appropriate "when the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp.*, 550 U.S. at 558.

## III.    Analysis

Wirtz brings his federal claim pursuant to 42 U.S.C. § 1983, invoking this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), and purports to sue Herman as an individual and in his official capacity. Dkt. 1, at 1-2, 5. He asks the Court to exercise supplemental jurisdiction, under 28 U.S.C. § 1367(a), over his related state-law claim. *Id.* at 2.[4]

---

[4] In exercising supplemental jurisdiction over state law claims in a federal question case, the federal court applies the substantive law of the forum state. *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999).

**1.      § 1983 claim**

Herman argues Wirtz fails to state a plausible § 1983 claim against him, either in his individual or official capacity, because even if the Court accepts as true Wirtz's allegations, those allegations fails to show that Herman violated Wirtz's constitutional rights. Dkt. 22, at 2-9. Herman further argues he is entitled to qualified immunity because Wirtz fails to show a constitutional violation. *Id.* at 9-10.

To state a plausible claim for relief in a § 1983 action, a plaintiff must allege that (1) a "person" (2) acting under color of state law, (3) deprived the plaintiff of, or caused another to deprive the plaintiff of, (4) a right protected by the United States Constitution or other federal law. *Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010); *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002). Under § 1983, a plaintiff may sue a defendant as an individual or in the defendant's official capacity.

An individual-capacity claim seeks to impose liability for the alleged violation against a defendant who personally participated in the violation of the plaintiff's federally-protected right. *Brown v. Montoya*, 662 F.3d 1152, 1163 n.8 (10th Cir. 2011). In contrast, when a plaintiff asserts an official-capacity claim against a county official, the plaintiff seeks to hold the county liable for the alleged violation under a theory of municipal liability. *Id.*; *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). But a county "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). Rather, a county "can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (alteration in original) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981)). Thus, to state a plausible claim against a county, a plaintiff must allege facts demonstrating either "that the unconstitutional

actions of an employee [1] were representative of an official policy or custom of the [county], or [2] were carried out by an official with final policy making authority with respect to the challenged action." *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

In short, regardless of whether Wirtz sues Herman in his individual or official capacity, he must first plausibly allege facts demonstrating that Herman's conduct violated his constitutional rights. Wirtz claims Herman deprived him of his rights to access the courts and to redress his grievances, in violation of the First, Fifth and Fourteenth Amendments, by intentionally interfering with the delivery of Wirtz's outgoing legal mail. Dkt. 1, at 14-15.[5]

It is well established that prisoners have constitutional rights to access the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). While the exact source of this right is subject to debate, the United States Supreme Court has explained that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for

---

[5] In his response to the dismissal motion, Wirtz asserts that Herman "wholly overlooks" that his interference with Wirtz's mail also violated Wirtz's First Amendment right to free speech. Dkt. 43, at 2-3. Even with the benefit of liberal construction, the Court does not read the complaint as alleging a free-speech claim in Count V. *See* Dkt. 1, at 3 (identifying Count V as "violation of access to courts and to redress grievances [sic] via mail tampering"); *id.* at 15 (alleging "Defendant Herman is therefore liable for interfering with Plaintiff's right to access the courts and to redress grievances in contravention of the 1st, 5th, and 14th Amendments to the United States Constitution in addition to his criminal acts, and for violating Oklahoma Administrative Code 310:670-5-9(7).")). In context, Wirtz's reference in the complaint to the First Amendment is most reasonably read as identifying the source of his right to redress grievances, not as asserting a free-speech claim. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) (discussing distinction between First Amendment's Petition Clause and Speech Clause, noting "[b]oth speech and petition are integral to the democratic process, although not necessarily in the same way," and stating that "the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes"). Because Wirtz asserts a free-speech claim for the first time in his response to the motion to dismiss, *see* Dkt. 43, at 2-3, the Court finds no support for Wirtz's argument that Herman overlooked or otherwise failed to respond to the nonexistent free-speech claim. Consequently, the Court will address only the denial-of-access claim Wirtz presents in his complaint.

some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414-15 & n.12 (2002); *see also Borough of Duryea*, 564 U.S. at 387 ("[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." (alteration in original) (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-97 (1984))). Stated another way, "the right [to access the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415. To state a plausible denial-of-access claim, Wirtz must (1) "describe the official acts frustrating the litigation," (2) describe "the underlying cause of action . . . lost" due to those acts, and (3) "identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* In addition, he must allege the official acts were intentional, *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005), and resulted in "actual injury," *Lewis*, 518 U.S. at 349. Actual injury in this context requires a showing that the official's conduct "frustrated or impeded [the prisoner's] efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010).

Herman contends Wirtz fails to state a plausible denial-of-access claim for two reasons. First, he argues Wirtz's allegations do not plausibly allege that Herman intentionally interfered with the delivery of either the mandamus action Wirtz sent to the District Court of Tulsa County in January 2017 or the three letters Wirtz sent to counsel in March and April 2017. Dkt. 22, at 5-6. Instead, Herman argues, Wirtz's allegations show only that Wirtz sent those items and the intended recipients did not receive them. *Id.* at 22; Dkt. 49, at 2. The Court agrees. Wirtz alleges the following with respect to these particular items: (1) "On January 30, 2017, Plaintiff mailed a mandamus action to the Tulsa County District Court (seeking a writ of access to his medical records). That action was never received or filed by the Tulsa Court," Dkt. 1, at 14, and (2) "At

least three letters that I mailed to my defense counsel . . . were never received by him in late March and early April, 2017," *id.* at 16.  At most, Wirtz's allegations suggest these particular items may have been "inadvertently lost or misdirected," not intentionally intercepted by Herman.  *Simkins*, 406 F.3d at 1242.  As a result, Wirtz's allegations do not plausibly show that Herman took any actions as to the January 2017 mandamus action and the April 2017 letters to defense counsel, much less that Herman took actions with respect to these mailings that violated Wirtz's constitutional rights to access the courts and redress his grievances.

Next, Herman argues Wirtz's denial-of-access claim is not plausible because, to the extent he alleges Herman deliberately failed or refused to mail certain items, Wirtz "does not allege that he suffered an actual injury, as he fails to specify the underlying cause of action that was frustrated by any of Herman's alleged actions."  Dkt. 22, at 6-9.  Herman specifically argues that Wirtz had no viable causes of action relative to the four letters Herman allegedly "refused" to mail, on April 25, 2017, to the Oklahoma Attorney General, the Department of Homeland Security, the Clerk of Court, the Medical Board, or relative to the May 2, 2017, letter Herman allegedly failed to deliver to the U.S. Attorney.  *Id.*  Again, the Court agrees.  While Wirtz does allege Herman intentionally refused to mail, or deliberately withheld these five items, *see* Dkt. 1, at 14-15, Wirtz fails to plausibly allege "that non-delivery of his legal mail resulted in 'actual injury' by 'frustrat[ing],' 'imped[ing],' or 'hinder[ing] his efforts to pursue a legal claim,'" *Simkins*, 406 F.3d at 1243 (alterations in original) (quoting *Lewis*, 518 U.S. at 351-53 & n. 3).  The United States Supreme Court has clearly expressed "the need for care on the part of the plaintiff in identifying, and by the court in determining, the claim for relief underlying the access-to-courts plea."  *Christopher*, 536 U.S. at 417.  As Herman argues, three of Wirtz's letters asked state and federal authorities either to investigate the DLMCJC's medical department or to prosecute Herman and the DLMCJC's

medical records custodian, one letter asked the Clerk of this court to send him copies of records, and one letter asked the Medical Board to institute a disciplinary proceeding against Dr. Cooper. Dkt. 22, at 6-9. The Court agrees with Herman that none of these letters plausibly supports that Herman's actions frustrated or impeded Wirtz's pursuit of "a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee*, 627 F.3d at 1191; *see also Christopher*, 536 U.S. at 416 (noting that "the predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.").[6]

Based on the foregoing, the Court finds Wirtz has not plausibly alleged Herman's conduct violated his constitutional rights to access the courts and to petition the Government for redress of grievances.[7] Thus, the Court concludes the complaint shall be dismissed without prejudice, in part, as to Count V, because Wirtz fails to state a claim against Herman, either in in individual or official capacity.

### 2. State law claim

As to the state law claim, Herman argues even if Wirtz has a private right of action under the Oklahoma Administrative Code, this Court lacks subject-matter jurisdiction over his state law

---

[6] In response to Herman's argument Wirtz points to the January 2017 mandamus action that was never received or filed by the Tulsa County District Court. Dkt. 43, at 2. Wirtz argues in his response that Herman "deliberately prevented him from filing [the mandamus] action." *Id.* As previously discussed, Wirtz's allegations in the complaint do not plausibly allege that Herman intentionally intercepted that particular legal mailing. Dkt. 49, at 2. And Wirtz cannot remedy that deficiency by asserting a new factual allegation in his response. *See Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) ("Plaintiffs cannot rectify their pleading deficiencies by asserting new facts in an opposition to a motion to dismiss.").

[7] Because Wirtz fails to state a plausible individual-capacity claim against Herman, the Court finds it unnecessary to address Herman's alternative argument regarding qualified immunity.

claim because Wirtz fails to allege facts demonstrating he complied with the notice-of-claim and denial-of-claim provisions of the Oklahoma Governmental Tort Claims Act (GTCA), OKLA. STAT. tit. 51, §§ 151 *et seq.* Dkt. 22, at 11-12. In the alternative, Herman argues (1) to the extent Wirtz intends to sue Tulsa County by asserting a state law claim against Herman, the GTCA provides statutory immunity to the County, and (2) to the extent Wirtz intends to sue Herman, individually, Herman is not a proper defendant because Wirtz fails to allege Herman acted outside the scope of his employment. *Id.* at 13-15. Wirtz does not seriously dispute these arguments. Dkt. 43, at 3.

Under Oklahoma law, "[t]he GTCA is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1163 (Okla. 2009). The GTCA defines a "tort" as "a legal wrong, independent of contract, involving violation of a duty imposed by general law, statute, the Constitution of the State of Oklahoma, or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment." OKLA. STAT. tit. 51, § 152 (14). The GTCA generally immunizes "the state, its political subdivisions, and all of their employees acting within the scope of their employment" from liability for torts. OKLA. STAT. tit. 51, § 152.1(A). In fact, under the GTCA, county officers and employees may not be named as defendants in a tort action unless the plaintiff alleges the officers or employees "did not act within the scope of employment." OKLA. STAT. tit. 51, § 153(C). The immunity provided by the GTCA is subject to a limited waiver for the state and its political subdivisions, but "only to the extent and in the manner provided" in the GTCA. OKLA. STAT. tit. 51, § 152.1(B).

The GTCA also has specific notice-of-claim and denial-of-claim provisions, *see* OKLA. STAT. tit. 51, §§ 156, 157. Compliance with these provisions is a jurisdictional prerequisite for

the GTCA's waiver of sovereign immunity to become effective. *Shanbour v. Hollingsworth*, 918 P.2d 73, 75 (Okla. 1996); *Griffey v. Kibois Area Transit* System, 328 P.3d 687, 690 (Okla. Civ. App. 2013). Significantly, the "[f]ailure to present written notice as required by the GTCA results in a permanent bar of any action derivative of the tort claim." *Harmon v. Cradduck*, 286 P.3d 643, 652 (Okla. 2012) (citing OKLA. STAT. tit. 51, § 156(B)).

Assuming without deciding that Wirtz has a private cause of action for Herman's alleged violation of Oklahoma Administrative Code § 310:670-5-9(7), the Court agrees with Herman that nothing in the complaint plausibly suggests Wirtz complied with the GTCA's notice-of-claim and denial-of-claim provisions. Dkt. 1, generally. The Court thus finds the state law claim must be dismissed without prejudice for lack of jurisdiction.

## IV. Conclusion

Based on the foregoing analysis, the Court concludes Herman's dismissal motion shall be granted and the complaint shall be dismissed without prejudice, in part, as to Count V and all claims asserted against Defendant Roy Herman.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Herman's motion to dismiss (Dkt. 22) is **granted**.

2. The complaint is **dismissed without prejudice, in part,** as to **Count V**.

3. Defendant Roy Herman is **dismissed** from this action.

**DATED** this 10th day of February 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE